This is Wall Chapel South, LLC v. United Food and Commercial Workers, Local Union. Mr. Oring, the podium is yours. Thank you. May it please the Court, my name is Ira Oring and I represent the developers of Wall Chapel South. We filed a complaint that alleged that the sham unsuccessful pieces of litigation and administrative appeals in violation of the secondary boycott provisions of the Labor Management Relations Act in order to coerce the developers from engaging in a business relationship with Wegmans, which is not a union employer. I'd like to focus on three issues. One is whether the sham exception to barring in addition to objective baselessness and subjective bad faith. Two, as we are here dealing with the district court's ruling on a motion to dismiss, did the amended complaint plausibly allege that the defendants had engaged in sham litigation? And three, were the allegations sufficient that the Mid-Atlantic Fund is a labor organization? And if I could, I'd like to start with access barring, but I'm not going to spend a lot of time addressing that issue because while it appears to be a major component of the defendant's argument, I don't believe, I believe it's readily apparent that as the district court found, access barring is not constitutionally required for the sham exception. The defendant's contention is that no matter how sham litigation is, and if it meets all other elements of a secondary boycott, we still had to allege and prove that the effect of their litigation was to bar my clients, the developers, from access to their permits. And they rely upon certain language in a Supreme Court case from 1972, California Motor Transport, where the court mentioned access barring as part of an antitrust action where the underlying conduct was in fact an attempt to bar access of a party to the court system. The Supreme Court has since considered the sham exception in professional real estate, PRE, and has held in that case, a 1993 case, where it recognized the test as a two-part test. First, in order to prove sham litigation, you have to demonstrate that the litigation was objectively baseless so that no reasonable litigant could expect to succeed on the merits. And second, here you have to show a subjective motive, which in this case would be a motive to essentially pressure and coerce my clients from not dealing with Wegmans. Well, did the district judge use the right test to determine whether the actions were sham or not? Because this is a multiple series of lawsuits. It was, Your Honor, a multiple series. Are you asking me whether he used the correct test? Did he use the correct review? I don't believe so. I think the issue is whether we plausibly allege that these decided that I assume that we had not plausibly alleged that they were objectively baseless. And I don't think that I believe, number one, that that's a question of fact. Baselessness is a question of fact in most instances. And we believe that he made assumptions and inferences that would not have been appropriate on summary judgment, much less on a motion to dismiss. Well, should he have looked at pattern and intent rather than the baselessness? No, I think that they go together, but I believe that we do have a hurdle of demonstrating plausibly that each of these cases were baseless. And I think that we've alleged that together with the record. So you're saying that if any one of them were plausible and had some basis in fact, that that's the end of the inquiry? No. Okay. No, I didn't think you meant that, but you seem to suggest that. I didn't mean to suggest that. You know, what if the court thought, well, maybe 13 of them were. But one certainly isn't. Is he entitled to throw the thing out on 12B6? No, I don't believe so. 13 would be enough? Well, you said one wouldn't be enough. I think you have to look at each piece of litigation. What if the judge agreed that one of them was a sham based on the allegations of the complaint? Well, he did. But the other 13 weren't. He did. Would you be entitled to go forward then? I believe so. The one's all you need. Well, I think we'd only be able to go forward on that one. You'd be able to go forward. That's what I mean. That's what I'm getting at. That's my question. You're not hanging your hat on having made sufficient allegations that all 14 are sham. Correct. Litigation. That you'd say one or more. Is that what you'd say? I would say that. One or more. Half of them, you'd say that's I think that I guess I want to be clear that what my position is. I understand you're not giving anything up here. No, no. I think that if I prove five of them are sham that the case should proceed on those five. If I if I if I allege that properly eight of them are sham, I think I can proceed on the eight. I understand. But Judge Floyd makes a good point. What about the rest of them being used to show a pattern? Well, and I you know, there's language in California. You've got a that same lawyers involved in everything. Yes. And and you allege he's being paid by the union, right? Yes. Yes. And you can prove that then the unions financially sponsoring all the litigation. Yes, your honor. And there is language in California motor transport that talks about might go to what the point that there's a pattern. Yes. And I with directly with regard to Judge Floyd's question, California Motor Transport talks about the fact that a broken clock can be right two times a day. And therefore, you know, if there's a pattern of sham activity, even if there there's one or two that were filed just willy nilly without regard to whether they are sham or not, then you can consider them as part of the entire. I think you have your cases mixed up. That was a Ninth Circuit opinion by Judge Kaczynski that made that point. The California Motor Transport case is a Supreme Court case. But the point is well taken that the fact that you have one or two cases that may have some rare, at least in the view of Judge Kaczynski, does not necessarily refute the assertion that there's a pattern of subjective bad faith litigation being initiated to harass a party. And it seems to me that if that's the test, it doesn't appear that that was the test that the district court judge applied in this case. Yes, your honor. And I would we certainly mention that test. I do want to indicate, though, that in my view, we've alleged that each of these cases was sham and we've appropriately alleged that each of these cases was sham. Well, what's the district court then supposed to do at the Rule 12 stage is accept that allegation and move on? Well, no, I think that given Supreme Court precedent, I think that we have to the question is whether we plausibly alleged that they were sham. And I think that there was significant records before the court of the underlying litigation. And I think that the court clearly was incorrect in finding that none of these cases relating to the Walsh Chapel South development were sham. And I can spend a few minutes going through each one. But I think that we are entitled to discovery and we're entitled basically to have a fact finder decide whether the cases were objectively baseless or not. Um, well, this case gets sent back. What what are we going to tell the district judges is the appropriate review standards to use? Well, I would I would say that if there is a pattern of sham of repeated litigation filed without regard to whether the cases are have merit or not and are done for the purpose of harassment. And there's a demonstration that at least the majority of them were proved that it was done for purposes of harassment. You don't you don't expect any direct evidence of it. Well, I don't have to prove it by circumstantial evidence. I will have to prove it by circumstantial evidence, which which would go to the pattern, the practice and that kind of thing. Like it'd be like a 404B case. Well, it very well could be, Your Honor. But, you know, I think the fact that the there is substantial evidence that these unions were the same lawyer was involved. Many of the same straw parties were and you're saying, I think, from the complaint that they had an interest in doing so because because they were going to put a nonunion grocery store in the mall or something. Yes, Your Honor. Yes, I think that it was all directed to that. And in fact, there is direct evidence of that is the executive director of the Mid-Atlantic Fund actually openly said to my client, if you go into that mall and you development and you have a wagons, we're going to fight every permit that you're going to try to get. And that's that's in the complaint itself. So in terms of the sham nature, we do have an allegation. That might be your directive. Yes, Your Honor. Yes, Your Honor. In terms of the the none of these none of these actions were successful. Several of them were dismissed. Most of them were dismissed on the eve of a hearing after a motion to dismiss or some other filing was had been filed by the developers challenging the legal merits and challenging the factual predicates. And the cases were then dismissed. What the district court found with those cases were that they were dismissed because there had been subpoenas issue trying to demonstrate the defendants had funded these litigation, this litigation. But that the fact that they were voluntarily dismissed does not in and of itself show that they were sham. But what it does show is when they're dismissed without having any response filed to these cases. And when they're dismissed after legal arguments are raised, we're entitled, I think, to have the inference in our favor, at least at this point in the proceedings. You know, we're all we've done is follow the complaint and haven't had an opportunity for discovered that they were dismissed because based upon a realization that the relief that was being sought was not obtainable. For instance, on some of them, the judge said they got a benefit out of out of the file. The defendants got a benefit out of the filings, your honor. Yes, your honor. Let me talk about what they want. And let me let me address those specifically. I think one of those related to the declaratory judgment filed in connection with TIF financing. TIF was financing by the county. It was integral to my client's ability to obtain private financing. And they found a declaratory judgment action seeking preliminary and preliminary injunctive relief and final and declaratory judgment that the county had not publicized the filing. And because of that, the county could never was enjoined essentially from republishing the TIF notice. And they were enjoined from ever enacting the legislation. They sought to prevent the county in the future from ever enacting the TIF. Well, the county republicized it and then they enacted it and they dismissed the lawsuit. They didn't. But the the the remedy they were seeking in their lawsuit was not to get the county to republish it. It was to prevent the county from ever having the financing again because they had failed. What, your honor? You think the judge misunderstood? I think he did, your honor. I don't. They got the benefit of making them do it right. Well, they did, but they didn't get the benefit of the relief that they sought in their lawsuit, which I would submit was relief that they could never have obtained in the first place, which was if the county made a mistake, sorry, you're out. You never can do this again. That was the legal theory they proceeded on. And the judge found that they got some benefit. Well, the benefit was the republishing of it, but certainly the the relief sought was a relief that could not have been granted legally, I believe. And that's, I think, an example of baseless litigation that was filed for one purpose, by the way. How much did they go beyond the pleading to get into all this stuff? Was there any issue about that? In the underlying litigation? Well, beyond this was dismissed on 12-B-6. Yes, your honor. Which basically, as a general prophecy, means look at the complaint. How much did they go beyond the complaint to figure out that there had been benefit from the lawsuits or something? Well, there was an ample record of litigation. So you had a record that was part of the complaint? Or was all this record judicially noticed? Yes. As part of the complaint? Yes. On the motion to dismiss. So there's a whole bunch of judicial notice here? Yes, your honor. So it was still 12-B-6? It wasn't sovereign judgment? No, it was 12-B-6. We never got past 12-B-6, your honor. Were all these other records made to exhibits to the complaint? Yes, your honor. I'm sorry, they were not made exhibits to the complaint. They were exhibits to the motion to dismiss. So you went beyond the pleading, but you say it's still a 12-B-6? They said it's still a 12-B-6, so you're not complaining about it? We're sensitive to the 12-B-6 things around here. Yes, we never got a chance to do any discovery. We never got past the court's ruling on a 12-B-6. Normally, 12-B-6, you've got to look at the complaint. If you go beyond the complaint and consider a bunch of exhibits to motions, you're dealing with summary judgment. There is authority, your honor, that says that the underlying litigation records does not convert this from a 12-B-6 to a motion for summary judgment. Clearly, we believe we're entitled to discovery. We believe we're entitled to be able to... There was no discovery undertaken? There was none allowed. There was never a scheduling order. There was never any ability. They submitted some of the court records, and did you submit some court records? Yes, we did, your honor. Everybody submitted a court record? Yes, and that's really, I think, where the fallacy is, which is I think there were a number of assumptions made by the district court and inferences which were not supported by the court records. I think we've laid out in our briefs a fairly good summary of why we believe that this litigation was baseless. The two that went to trial, for instance, one was a mining permit appeal where the circuit court judge found that it was based entirely on speculation. It was contrary to the environmental relief they saw because they sought to basically stop compliance with a consent decree, and he found that it was basically a backdoor attempt to challenge a consent decree where they never were parties to the consent decree. They raised the same issues in a second circuit court action that the court dismissed on a motion to dismiss, finding that there had been no evidence that my client had created a nuisance, finding that the objectives were to do an end to run around the administrative process. So we believe that there, in fact, was baselessness, and it was adequately pled. Before you sit down, can I just ask you to go back to Judge Floyd's question about what do tell the district judge if we send this case back? You seem to be, I think you said both things. First, you said you apply this two-part test, baselessness and subjective motivation, but then you started talking about the test with respect to a pattern of litigation. Those two seem to me to be mutually exclusive. You can't have, you have to pick one. So I'm asking you to pick one. Which one applies? Well, I do think that there is support for the fact that if there's a pattern of litigation that shows that that pattern is filled with baseless litigation, that you have to look at the pattern as a whole and determine, at least on a motion to dismiss, that the case should proceed because there's been a plausible allegation that there's been sham litigation that's been engaged in. But then on the other hand, if the district judge is satisfied that some percentage, and whatever that number is, more than 50 percent or higher, in fact turns out to be, to have some merit, then are you out simply because one or two don't have merit? I don't believe so. I think that we're... Those are two different tests. I think that the question is if there are five that have merit and six that don't, I think that we're entitled to proceed. Those six are certainly sham. The question is whether the others are infected by the numerous sham filings that have been filed. Maybe the fact that you have five that have merit would be evidence that the other nine might have some merit. It may be less merit than the first five, but the pattern would come into play there. I mean, that's sort of the thing that... Criminal prosecutors use this 404B, it seems like more than the civil people, but they always thought it was coming in with uncharged defenses and uncharged evidence in drug cases and stuff for people in the penitentiary. We say that's a rule of inclusion in this court. Yes, Your Honor. 404B is a rule of inclusion. They put it all in. Dealt with 404B many times in my years as... For people in the penitentiary on all time rounds. Yes, Your Honor. But I guess I would leave with one comment, which is I believe that we did the baselessness of each of these for purposes of a motion to dismiss. I'm not going to leave you alone with that answer. That was the wrong review, wasn't it? To look at each one of the lawsuits for baselessness. Well, I think that if there is a pattern, and we did argue this to the judge below, if there is a pattern in practice of sham litigation that is done without regard to merits, I think that clearly that is a basis on a 12B6 motion to let a case go forward. Thank you, Your Honor. Thank you, sir. Mr. Anderson? Good morning, Your Honor. I speak for all the defendants on the Nord-Pennington issue. My colleague Sharon Goodman will address the particular issue of her client, the Joint Labor Management Fund. I'll go straight to the question that Judges Floyd and Diaz raised about the question of the pattern as making a difference in the standard review. That was something that the developers advocated before Judge Quarles. Judge Quarles squarely rejected them and squarely rejected the Ninth Circuit's proposition in Judge Kuczynski's case, the USS Appeal. Nowhere in their appellate brief do they challenge Judge Quarles' rejection of the Ninth Circuit's pattern decision. Now, if, sua sponte, this Court is interested in revisiting that question, notwithstanding that waiver, I ask the Court for leave to resubmit my district court briefs to Judge Quarles that address the issue of whether you have a different standard review where a pattern is alleged. In particular, and I'm arguing this from memory because this was not an issue in the briefs before this panel, the Virginia Supreme Court has specifically rejected the argument that an allegation of a pattern makes a difference to the count-by-count analysis of baselessness. I would also point out that in cases in this circuit, there's a case called Levine, and again, I'm at a disadvantage here because I haven't studied this since the question was waived in their appellate brief. So I would argue simply that the issue of whether a pattern makes a difference to the standard review is not before you because the developer waived it. If you're going to entertain it sua sponte, please give me the chance to resubmit my district court pleadings on that issue. And now I'll turn to the specific... You say they waived it and it was wrong. You said first they argued it and Judge Quarles rejected it. Judge Quarles rejected it squarely in his opinion, and on appeal, that issue is not raised at all. There is no claim of error in the rejection of Judge Kaczynski's U.S.S. Posco case. Now if the court wants to take that up sua sponte, I'm happy to renew the litigation, but please be aware that I'm at a disadvantage here because you don't have my district court brief. So let me turn to the specific items. There's a lot of... So you say you have to look at each of them individually and separately and you can't look at them as a package? That's right. And you say then that you say if they allege 14, they've got to show 14 or they're out of court? No, if they allege 14 and they can show one, they might have a cause of action as to the one. So they are distinct in that sense. Right, but you can't get a snowball effect by saying... So you're saying that the judge, you all, you're entitled to have them looked at individually and separately. Yes. And that if any of them have any merit, they could be sent back, but we couldn't send the whole package back. Right. In fact, Judge Quarles, in his opinion... But they don't allege it as 14 counts. Do they? Well, they allege what they are... How many counts are there to complain? That's right. And we're still entitled to a baseless review on each one separately, correct? Baseless review on each of the 14... Right. But they allege them as one claim. Well, Judge Quarles found that they weren't entitled to lump them all together and get an impressionistic baselessness judgment on that basis. And that, as I say, that... Well, maybe he was wrong on that. Yeah, but the developer waived that on this appeal. If you're going to take it up sua sponte, please let me file my district court briefs with this court that addressed that issue directly. So turning to the specific cases, the first one is an August 2008 motion to rescind zoning. On this, the developer, on the merits, was absolutely dead to rights. The owner of the site had said in getting the zoning approved that there were no environmental issues whatsoever and that fly ash, this is the carbon residue of a power generation plant, was not hazardous. But a year later, the owner entered into a consent decree that provided for a million dollars in penalties that set forth that they had done studies prior to the point they made those representations to the zoning board that showed that they knew very well that there was an environmental problem. The only issue in this case is whether the opponents mustered parties withstanding. And the issue there was whether, for example, the union president who was the first party counted because he rented his residence rather than owning it in fee simple. There were other neighbors where the issue was, were they close enough to count as abutters? Were they two blocks away or were they 100 feet away? And that claim got dismissed six days after the county filed the motion to dismiss. But something to remember here is that this motion is filed against the county. It's not to attack their zoning, their ability to build a shopping center. Well, it's seeking review of a government action in which the developer was interested. That's right. They're the real party in it. Oh, absolutely. And they had a right to intervene. And the same lawyer did all this stuff. That's right. According to the complaint. The same lawyer is representing the same objectors. That's correct. The same lawyer is representing all of it. And they say that they allege that the union's paying the lawyer. Yeah, that's right. All right. Well, isn't that saying that there's a pattern? No, there's not. Hiring the same lawyer to do all this stuff and the union's paying it. Right. That's on its face. Assuming, right, right. But there is nothing illicit. It's a series. There is nothing illicit about supporting litigation. Well, there might not be anything illicit. Right. But they say there is in their complaint. And the question is whether they're entitled to go forward on that or whether it's subject to a 12 v 6 dismissal, which you prevailed on below. Right. And by the way, to answer your question, you can prevail on it up here. To answer your question. They allege on appeal. They come up here and argue that they've got the same lawyer. The union's paying it. And they're just fighting this tooth and nail to keep from building this mall because they don't want the grocery store up there that's nonunion. Your Honor, I must I must go straight then to the question about access barring. This is a federalized sanctions hearing. They admit on page. Federalized what? Sanctions hearing. That's that's what they're trying to use the sham exception to do. To federalize the state law of sanctions. They admit at page 15 of their reply brief. The developers admit that that these objections did not delay the project. That is, the objections did not obstruct their access to the permitting process and did not obstruct their ability to use the permits once they got them. And that's for a reason. It has nothing to do with the good faith of the objectors. It's because Maryland law forbids that outcome. Maryland law provides that if you file an objection or a petition for review or administrative appeal, you may be heard, but you impose no stay or lispid ends or attachment or automatic coercive restraint against the developer in the meantime. You say this is a federalized sanction process, but if the party who is allegedly behind the series of lawsuits is not a party to the litigation, then what good are sanctions in that context? Under Maryland law, you can go after the undisclosed principle who's behind the defendant in a judgment. In other words, if they had filed the sanctions motion the way they could have and should have to say that we've been afflicted, we've had to spend attorney's fees dealing with frivolous positions in a lawsuit, and the lawyer who it's alleged was having all of his fees and costs paid by the union said, I'm judgment-proof, I refuse to pay you, they could at that point have gone after the undisclosed principle. And I have a case citation for you on that. Well, I guess we'll hear from opposing counsel about that. But the whole notion of this doctrine and being able to allege damages for sham litigation is precisely that. Those are not inconsistent. Why should those remedies be inconsistent? They seem to be to be complementary if, in fact, the claim can be made out. Because the origin of the sham exception comes from California Motor Transport, where the allegation is that the objections are keeping, in this case, the developer from getting access to its own First Amendment petitioning, that you can't even get a permit. If you get a permit, you're not allowed to use it because of objections that are filed. And those objections have a restraining effect, notwithstanding the fact that they're allegedly baseless. Well, doesn't litigation have a restraining effect on virtually all commercial activity? None whatsoever. Well, no developer in his right mind is going to proceed under the threat of litigation until he can clear all of those cases from the deck. No, but that contradicts the allegation of baselessness. If no reasonable person would look at these objections and think that they had any chance of prevailing, which is what they must allege, then there's no rational reason why a developer would slow up its use of the permit because it knows what the outcome of that proceeding is going to be. You think lenders who finance projects care about the... But it's the very existence of litigation which breeds uncertainty into the entire process. And isn't that the very kind of activity that this doctrine is intended to prevent? Well, it's only intended to prevent it to the extent that you have... I mean, it's got to be more than subjective bad faith in the sense that you want to oppose the agenda of the developers. It's got to be a subjective bad faith to use the machinery of the legal process as a weapon in and of itself. And if the only weapon that's identified here is the fact that the developers spend attorney's fees to voluntarily intervene in litigation that the government is defending anyway, then what you have is the federalization of sanctions litigation. That's exactly right. You have federal courts taking over the job of deciding what is and is not permitted under Maryland land use law. And this is an issue on which the federal courts don't have subject matter jurisdiction in the first instance. The exhaustion principle that they can't come to the federal court unless they go to all the remedies in the Maryland courts? That's right. That's the rule. Even if there's a rule... Title 29 says they, according to them... Title 29 says nothing about litigation. It only speaks to coercion. Coercion. Right. And they say the litigation is the means of coercion. Right. Jam litigation is the means of coercion. We've got 14 of them here. But even... You sign the whole thing up for litigation and you want to stop it or slow it down or whatever you want to do. Your Honor, even... And usually it's subjective bad faith. I mean, that's the hardest thing to ever determine without getting a fact finder involved. Right, but it's the subjective bad faith to abuse process. And the Maryland Court of Appeals would not consider... That's the ultimate fact question. Is it subjective bad faith? What was in your mind? But as a matter of law... What was in the mind when they hired that lawyer and had him bring all those administrative claims and lawsuits? I mean, that's... You normally need a jury to decide that kind of stuff, unless it's agreed upon. But not if under Maryland law, the filing of these objections is deemed not to be an abusive process as a matter of law because there's no interim restraint... There's no interim restraint filed. What they're asking the court to do is to develop a doctrine under the sham exception, which limits access to the Maryland courts in a much more draconian way than Maryland law itself permits. Because in a case with exactly this fact pattern, 1,000 fleet partnership, the Maryland Court of Appeals said there was no abusive process because the repetitive objections of opponents did not impose any actual restraint on the developer to proceed in the interim. Your Honor, I would like to go back to analyzing each step, each objection on the merits. There's an objection that the alleged union allies sued to require the developers to post a bond, and they cited a regulation saying that the developers were required to post a bond over a certain matter. The developer ended up posting the bond, and at that point, the union allies dropped the lawsuit. That is a successful lawsuit. That cannot be a sham under professional real estate investors. The same for the challenge to the tax increment financing. That was a case where the Anne Arundel County promulgated a tax increment financing measure without adequately publicizing it in the paper and following other procedural steps that the code required. The union allies sued over that. Then the county readopted the measure following the procedures that the allies had demanded in the lawsuit, and then the union allies withdrew their suit. Counsel says, well, they also asked for relief that said that the tax increment financing couldn't be implemented at all. But that was just the final paragraph, the last two sentences of the prayer for relief in a measure that was withdrawn as soon as the county did exactly what the main body of the suit asked for. That is not a sham. That is successful petitioning. Now, finally, it's unfair to talk about 14 different appeals to make it sound like something hard. Sorry. That's too many. It's too many. They are separately counting each grading permit appeal. How many is it fair to talk about? One, because there is a single body of litigation. No, no. I'm sorry. When I'm talking about the June 2010 nuisance, there's the first three I just talked about. Sorry. That wasn't 14. No, I talked about three. The remaining 11 are all subsumed in one global procedure. There's not 14. There are three. That's right. That's right. And this is why it's so unfair. And your honor, I realize I'm hitting my red light, but I do ask that I continue the colloquy on this. The you heard counsel say their application for an injunction against the grading permits was rejected because they were required to exhaust their administrative remedies. That was a court measure saying that you have to file a permit by permit appeal as to each separate grading permit that arises from this site. And what that did is it forced the union allies allegedly to multiply the number of appeals, even though they're all alleging the identical thing. And the identical thing is profound. Are you using time? I don't mean to be your honor. I'm just trying to using your own. Okay, well, then I will. I will. I will leave that for the briefs. Just 30 seconds. Thank you. All of the appeals that are jumbled together as the remaining 11 minus the three I just talked about are fundamentally based on arguments that come from expert testimony by the chairman of the Johns Hopkins Geology Department. His name is John Boer, who put out an expert report saying that fly ash remediation at this project is inadequate and the Maryland Department of the Environment is not doing it. Sorry. That is in the record. Well, you all did go put a lot of stuff in here, right? And it came in without objection. So even if you interpret that to be more than just 12 v 6 incorporation of court records and you understand that to be a rule 56, if it comes in without objection, there's no prejudice and you can affirm on that basis. But the head of the Johns Hopkins Geology Department gave expert testimony that supports each one of the admittedly identical grading appeals, but they were filed repetitively because the developers got the court to tell us we had to file a separate grading appeal as to each separate item. It all flows from the same basic idea that the Maryland Department of the Environment is not doing a good enough job on remediation. The state court didn't agree with that, but the head of the Johns Hopkins Geology Department said that they said so. And that renders the objection not a sham. That is reasonably based such that it meets the very low standard that the Supreme Court set out in professional real estate investors. And I thank the court for its time. Ms. Goodman. Good afternoon, Your Honors. May it please the court. Sharon Goodman on behalf of the Mid-Atlantic Retail Food Industry Labor Management Fund. And you've heard from the representative of the unions as to why, even if the alleged actions are true, this was not a secondary boycott. I offer you another way to resolve the case as to the fund. That the fund was not a labor organization under the National Labor Relations Act. We're here today on the appeal of a complaint of the district court's correct conclusion. If you're not a labor organization, you're entitled to be dismissed. We are, Your Honor. And the district court correctly concluded that we were not a labor organization and in fact concluded that they had not alleged sufficient facts to establish that we were a labor organization. They alleged that we were a charitable organization, that we are a joint labor management organization, and that an employee of the fund made a phone call to an individual. And I would just correct the record. The phone call alleged was made to Brian Greenberg of Greenberg Gibbons and not to a party in this action. Well, is it true that no employees participate in the fund? No employees participate in the fund. That's an element of the definition of a labor organization. So there are no employees involved. It's not a labor organization. That is correct. There are no employees involved. And under the standard that you've established under the NLRA, under Peninsula Hospital and EFCO Corporation, in order to establish the fund as a labor organization, you need to establish that there is a, to bring a pattern again, a pattern or practice of, and a bilateral mechanism for employees to make proposals and for the employer or the management to react to those proposals. And again, the only alleged facts in the complaint as to our fund was a phone call and attendance at a public hearing. And the court has recognized that an overly broad reading of the NLRA would be as destructive to its objectives as ignoring the statute entirely. And there are dozens of cases under the NLRA addressing what is a labor organization and not a single one has found that a joint labor management fund meets the definition, meets this definition under the NLRA. And in addition, there are five cases finding, which are cited in our briefs, that a joint organization is not a labor organization. All of the cases they've cited go to entities formed solely by unions which act extensively and deal extensively with employers. Then having failed to establish that we're a labor organization under the NLRA, they seek to import the definition from the Internal Revenue Code, section 501c5, and ask the court to use that definition to satisfy the NLRA. And that argument fails as well. The Internal Revenue Code is focused on tax qualification, on tax exemption. And 501c5 finds as labor organizations, organizations that have in part objects that are not a labor organization, the betterment of conditions of those engaged in pursuits. They're focused on broad action, which is why the Internal Revenue Service can leap labor, agricultural, and horticultural together under a single heading to the service. They are similarly, they are similar enough that they can be categorized together. The rest of section 501c is similarly broad. 501c3 lumps together churches, animal rights groups, book clubs, hospitals, colleges, a whole number of organizations. And to say that the fund is under 501c5 because it has much in common with a labor organization, that's not correct. The code lumps together any organization that works for the betterment of conditions into a labor organization for code purposes. But that's a far reach from lumping them together as a labor organization for the NLRA's purposes. Most organizations that are NLRA labor organizations will be labor organizations under the code. But both NLRA labor organizations and all kinds of other organizations are 501c5 labor organizations under the code. And in Andrews, you explained why a statute, why definitions within a statute need to be defined within the statute as a whole and that the code's definition of using labor organization and importing that into the NLRA would result in the NLRA encompassing far more than the context of the statute ever intended. And the Supreme Court has found that absent any explicit connector between definitions and a statute, they have declined to read one word from a statute into another word because the finding of the absence of a cross-reference they found to be revealing, which is why no court has held what the appellants seek for you to hold today. And for these reasons, we respectfully request that the district court's judgment be upheld. Thank you, Ms. Goodman. Thank you, Your Honor. Mr. Orang. Just a couple comments, if I may, on the issue of the fund, because I would like to then turn to the issues raised by the locals. We did allege that there are employees that are part of the fund, because the fund is comprised of four trustees, one from each of the local unions, one from Giant Supermarket, and one from another supermarket chain, which I cannot recall at this point. But clearly, there are two employees that are part of the fund. They're trustees of the fund. We cited a couple of NLRB cases which say that engaging in secondary boycott activity is an effort to organize, and we believe that that is directly applicable to here, where the fund was alleged to have been involved in all of this activity, and we believe that they engaged in organizational efforts which carry it within to the definition of a labor organization. Well, if it's true that you didn't raise on appeal the pattern argument, and you relied on Judge Quarles' sham analysis, how do we give you relief? Well, your colleague says you wait. Well, you know, we've certainly appealed Judge Quarles' dismissal, and I'm not quite sure. I mean, what we've alleged is that Judge Quarles' analysis was incorrect, because he found that there was no baselessness, and he found that as a matter of law, and we believe that each of these matters that we proved, we alleged appropriately there was baselessness. So they never asserted that somehow these had to be set out in separate counts. There's no argument that it was multiplicitous. We alleged one cause of action, and I think that to the extent that if the court found that five of them were baseless, I think we're entitled to at least proceed on those five that are baseless. Well, I guess what Judge Floyd is suggesting is that if we were inclined to remand this case on the notion that the district court incorrectly refused to apply the pattern test, can we do that given that you haven't raised that affirmatively in your brief as an error? I don't think that we've, we certainly don't think we've waived it. I don't think that you have to raise every issue in your brief that you're going to assert. We certainly appealed his decision dismissing the case on a motion to dismiss, so I think it places squarely in front of this court the appropriate standard. And the mere fact that we didn't incorporate baselessness, I don't think it constitutes a waiver. It's one of the, we certainly argued it below, and Did you argue it on appeal? When I was asked, I certainly did. But you didn't argue it in your brief? I didn't. It was not in the brief, Your Honor. Our position in the brief is that we have appropriately alleged that each of these matters, each of these, and by the way, there was an appeal of the rezoning, there was an appeal of the TIF, there was an appeal of the bond, there was an appeal of a mining permit, there were five or six permits that were challenged. So there was not just three pieces of litigation. That's just an incorrect statement of the record. But I think that if we have alleged that eight, appropriately alleged, eight out of the ten are sham, I think those eight can certainly proceed if the argument is that somehow we have waived the pattern. But I don't think we waived it at all. We have appealed the judge's decision that this case was appropriately dismissed on the basis that we hadn't alleged that these were sham activities. I don't think every argument has to be raised in a brief. Certainly, in response to a question, I've indicated that I think Maybe the pattern issue is an evidentiary issue for the district court to deal with later on. Yes, Your Honor. Unless the court has any more questions. Thank you very much, Mr. Oren. We'll come down to Greek Council and adjourn the court until 8.30 tomorrow morning. This honorable court stands adjourned until tomorrow morning at 8.30. God save the United States and this honorable court.
judges: Robert B. King, Albert Diaz, Henry F. Floyd